[Civ. No. 29447. Second Dist., Div. One. July 15, 1965.]

CENTRAL BASIN MUNICIPAL WATER DISTRICT, Petitioner, v. CARL FOSSETTE, as Secretary of Central Basin Municipal Water District, Respondent; AZUSA AGRICULTURAL WATER COMPANY et al., Real Parties in Interest.

Burris & Lagerlof, Stanley C. Lagerlof, H. Jess Senecal and Jack T. Swafford for Petitioner.

Surr & Hellyer, Clayson, Stark, Rothrock & Mann and John B. Surr, as Amici Curiae on behalf of Petitioner.

Tuttle & Taylor, William A. Norris and Alan Beban for Respondent.

No appearance for Real Parties in Interest.

FRAMPTON, J. pro tem.*—The petition herein was filed on May 19, 1965, in the Supreme Court and was thereafter transferred here for decision.

Petitioner seeks a writ of mandate to compel respondent, as its secretary, to certify to the passage and adoption of its resolution Number 2-65-185, and to transmit a duly certified copy thereof to the Upper San Gabriel Valley Municipal Water District.

Petitioner is a municipal water district organized under the Municipal Water District Law of 1911, as amended. (Stats. 1963, ch. 156, div. 20; Wat. Code, § 71000 et seq.) Petitioner's boundaries lie within the County of Los Angeles and its principal office is located therein. Respondent, at all times since February 10, 1965, has been and now is the duly appointed, qualified and acting secretary of petitioner.

*Assigned by the Chairman of the Judicial Council.

■ It is respondent's obligation as secretary to perform in addition to the duties imposed on him by law, such duties as may be imposed on him by the board of directors of petitioner. (Wat. Code, § 71360.) ■ The duties imposed on respondent by law and by petitioner's board of directors include those relating to the certification of the passage and adoption of ordinances, resolutions, motions and orders of the board of directors of petitioner.

Petitioner, Board of Water Commissioners of the City of Long Beach, and the City of Compton, a municipal corporation, are plaintiffs in an action commenced May 12, 1959, Number 722647, in the Superior Court of the State of California, in and for the County of Los Angeles, against nine cities, two county water districts and 17 public utilities and private water companies, each of which defendants is located within and produces water from an area upstream on the San Gabriel River from the area in which plaintiffs are located. The defendants named and served in said action, together with California Domestic Water Company and the City of Whittier, constitute the major producers of water in the area in which they are located. Issue was joined on the filing of the answers to the amended complaint. By the amended complaint, petitioner and the other plaintiffs, (a) sought to compel each of the defendants to set forth the nature and extent of its claims in and to the water referred to therein as being the water of the "San Gabriel River System," (b) requested that the court fix and determine the rights, if any, of each defendant in and to said water, and (c) requested that each defendant therein be perpetually restrained and enjoined from taking such water in excess of the amount so fixed and determined by the court. After the commencement of the action there were certain dismissals had and new parties added where there had been mergers or transfers of water rights. California Domestic Water Company, a corporation, and Upper San Gabriel Valley Municipal Water District, a municipal water district (hereinafter referred to as "Upper District"), intervened as parties defendant.

On February 10, 1965, issues having been joined, the petitioner and the two other plaintiffs and the defendants entered into, executed and filed, in the action, a stipulation for judgment which became fully effective on said date. The stipulation provided, *inter alia,* that upon the occurrence of specified conditions precedent, the form of judgment at-

tached thereto should be rendered. The judgment provided for the appointment of a "Watermaster" consisting of three persons, one as a representative of "Lower Area Parties" (as that term is defined in paragraph 3(c) of the judgment), another acting as the representative of "Upper Area Parties" (as that term is defined in paragraph 3(d) of the judgment), and a third person jointly nominated by petitioner and Upper District. The Watermaster, when duly constituted and appointed pursuant to paragraph 6 of the judgment, will administer and enforce the provisions of the judgment and the instructions and subsequent orders of the court. In order to perform those duties, the Watermaster, by paragraphs 7 through 13 of the judgment, is given certain powers and duties, including the collection of information and data concerning the quantities and quality of various categories of water passing from "Upper Area" (as that term is defined in paragraph 3(e) of the judgment) to "Lower Area" (as that term is defined in paragraph 3(f) of the judgment). Paragraph 4 of the stipulation for judgment provides as follows:

"Plaintiffs and defendants agree that during the period prior to entry of the attached form of Judgment, they will cooperate in endeavoring to collect such information as the Watermaster would obtain if the attached form of Judgment had been entered and the Watermaster had been appointed by the Court pursuant to paragraph 6 of the Judgment, which information is herein referred to as 'said information.' To that end, the parties hereto hereby agree that promptly following the complete execution of this stipulation by all parties, Upper District and Central Municipal shall each notify the other in writing as to the identity of the person who it expects will be nominated as the representative of Upper Area Parties or Lower Area Parties, as the case may be, under paragraph 6 of the Judgment. Upon receiving such notice, Upper District and Central Municipal shall each instruct its designated nominee that until the attached form of Judgment is entered and the Watermaster has been appointed pursuant to paragraph 6 of the Judgment he shall in cooperation with the other designated nominee do all things reasonably necessary to obtain such of said information as is available from the parties hereto or any public agency."

On February 17, 1965, petitioner received a certified copy of a resolution adopted by the board of directors of Upper

District, determining that Thomas M. Stetson was the person expected to be nominated as the representative of the Upper Area parties under paragraph 6 of the judgment. Following the execution of the stipulation for judgment by all parties, petitioner's board of directors did determine, on February 18, 1965, the identity of the person (hereinafter sometimes referred to as "said designee") whom petitioner expected would be nominated as the representative of said Lower Area parties under paragraph 6 of the judgment. Identification of Max Bookman as said designee was fixed by resolution Number 2-65-185 duly adopted by petitioner's board of directors on the above mentioned date. By the terms of said resolution, respondent was ordered to give the necessary written notice to Upper District, identifying said designee by certifying to the adoption of said resolution and by transmitting a duly certified copy thereof to Upper District. On March 17, 1965, respondent did refuse to either certify or to transmit as ordered a certified, or any, copy of said resolution. Respondent bases his refusal to act upon the grounds that a substantial question exists as to the validity of the stipulation for judgment: "(i) because of the lack of statutory power of petitioner to enter into the Stipulation for Judgment; (ii) because of the lack of statutory power of Upper District to enter into the Stipulation for Judgment; and (iii) irrespective of the power of either petitioner or Upper District to enter into Stipulation for Judgment."

Respondent's refusal to comply with the order and direction of petitioner's board of directors was communicated to them at the board's regular meeting held on March 17, 1965, whereupon the board duly adopted its resolution Number 3-65-186, wherein the determination embodied in and approved by resolution Number 2-65-185, was approved, ratified and confirmed, and respondent was further ordered to give the necessary written notice to Upper District identifying Max Bookman as said designee by certifying the adoption of resolution Number 2-65-185 and by transmitting a certified copy thereof to Upper District. Contrary to such further order, respondent did refuse, at the meeting on March 17, 1965, and still refuses either to certify or to transmit, as required, a certified or any copy of resolution Number 2-65-185.

Petitioner asserts that the respondent is adversely affecting and frustrating the agreement of petitioner and Upper District to perform the stipulation for judgment in accordance with its terms, particularly as provided in paragraph

4 thereof, in that until said written notification is given to Upper District, Upper District cannot lawfully comply with paragraph 4 of the stipulation and instruct its said designated nominee that he shall, in cooperation with the designated nominee of petitioner, do all things reasonably necessary to obtain the information referred to in said paragraph 4 as "said information" to the extent such information is available from the parties to the stipulation for judgment or any public agency. Petitioner urges that respondent's failure to act is delaying the day when there will be delivery to said Lower Area of such quantities of "Make-up Water" (as that term is defined in paragraph 3(m) of the judgment) as it is entitled to receive pursuant to the terms of the judgment once such judgment is rendered, in that (1) respondent's refusal will result in a substantial delay in the program for cooperative collection of that information which the Watermaster would obtain after the judgment had been entered and the Watermaster had been appointed by the court pursuant to paragraph 6 of the judgment, and (2) the delay in collecting such information will necessarily mean all such information will have to be collected after the Watermaster is appointed by the court, resulting in an extended delay in the making of the numerous determinations required by the Watermaster, which determinations provide the basis for the obligation of Upper District to deliver such "Make-up Water," such obligation being determined from October 1, 1963, under the terms of the judgment.

Petitioner asserts that the controversy involved in action Number 722647 and its resolution by the stipulation for judgment and entry of the judgment, attached thereto, present vital questions affecting the public health, necessity, and welfare of a substantial portion of southern California areawise and populationwise. That the case involves questions of water rights as between owners of water rights, owners of land, and inhabitants, of two adjacent areas, the Upper Area and the Lower Area, which areas contain approximately 408.344 square miles, having a population of approximately 2,319,408 and an assessed valuation of approximately $4,116,-788,225. That Upper Area contains, in addition to county territory, the 15 cities located within Upper District, plus the cities of Alhambra, Monterey Park, Azusa, and West Covina. Upper Area contains approximately 166.47 square miles, has a population of approximately 737,431 and an

assessed valuation of approximately $1,174,034,000. Of those totals, Upper District contains approximately 132.47 square miles, a population of approximately 538,569, and an assessed valuation of approximately $855,754,000. Lower Area contains approximately 241.874 square miles, a population of approximately 1,581,977 and a total assessed valuation of not less than approximately $2,942,754,225. Of those totals, petitioner has approximately 186.78 square miles, a population of approximately 1,136,407 living in 22 cities and county territory, and a total assessed valuation of not less than approximately $2,162,434,835. The City of Long Beach has approximately 46.77 square miles, a population of approximately 368,782 and an assessed valuation of not less than approximately $683,058,000. The City of Compton has approximately 8.324 square miles, a population of approximately 76,868 and an assessed valuation of not less than approximately $97,261,390.

It is urged that Upper District and other agencies in the Upper Area need and desire to intensify efforts immediately to replenish ground water supplies in Upper Area. That so long as action Number 722647 is pending and the judgment is not entered, it is, as a practical matter, impossible for such efforts to be undertaken in any substantial respect because the physical facts, such as location and capacity of water spreading grounds make it relatively certain that Lower Area would be the immediate and primary beneficiary of much of such replenishment, and it would, therefore, be uneconomical and unwise to expend Upper Area funds for such replenishment. It is urged further that Upper Area presently has no public agency such as a replenishment district with power to assess a pump tax to cover the cost of purchasing and spreading imported water in Upper Area. Nor can the pumpers in Upper Area justify, as a business decision, voluntarily engaging in such activities on a joint cooperative basis unless and until the issues in action Number 722647 can first be resolved. It is urged that it is important that delivery of make-up water under the terms of the judgment be expedited to the greatest extent possible so as to maximize the chances for success of extensive efforts recently taken by it on behalf of Lower Area parties to mitigate salt water intrusion in certain coastal areas due to excessive overdrafting of presently inadequate supplies of fresh water. That the effective date of the judgment for the purpose of determining the rights and obligations of the parties thereunder is October 1, 1963, and therefore, it is of the utmost concern that a final

judgment be obtained at as early a date as possible so that the necessary quantities of water, both natural and supplemental, will flow from Upper Area into the Central Basin and prevent further salt water intrusion.

Petitioner urges further that controversies over water rights as between adjacent areas deriving their natural water supplies from a single river system are now frequently before the courts of California. That the Santa Ana River system, for example, has twice been the subject of such an action. (*Orange County Water Dist.* v. *City of Riverside* (1957) 154 Cal.App.2d 345 [316 P.2d 43]; (1959) 173 Cal. App.2d 137 [343 P.2d 450]; *Orange County Water District* v. *City of Chino, et al.,* Orange County Superior Court, Number 117628, filed October 18, 1963.) The second such action is still in its initial exploratory stages. Petitioner estimates that if it becomes necessary to try action Number 722647, a minimum of 200 days of trial time will be necessary in order to properly try the case. Therefore, if the approach taken by the judgment attached to the stipulation for judgment is approved as a valid solution for the controversy involved, it will offer an acceptable prototype consent judgment for use by the parties in other similar river adjudication actions. That such a consent judgment will relieve the courts of the considerable burden upon available court trial time, and will substantially reduce the time between the commencement of such actions and the date when effective relief is available to the downstream users.

Respondent has interposed a demurrer to the petition claiming four major grounds upon which the stipulation and proposed judgment should be held invalid as a matter of law. Under these circumstances, we must assume the truth of all material allegations of fact set forth in the petition. (*Stigall* v. *City of Taft,* 58 Cal.2d 565, 567-568 [27 Cal.Rptr. 441, 375 P.2d 289]; 3 Witkin, Cal. Procedure (1954) pp. 2553-2554.)

We will discuss the four grounds of alleged invalidity in the order in which they appear in the demurrer.

I

It is claimed that the stipulation for judgment is invalid because such an agreement is beyond the powers granted to petitioner by law.

■ Section 71751 of the Water Code provides ''A district may commence, maintain, intervene in, *and compromise, in the name of the district,* any action or proceeding involving

or affecting the ownership or use of water or water rights within the district, used or useful for any purpose of the district, or a common benefit to lands within the district or inhabitants of the district.'' (Italics added.) The stipulation for judgment here under consideration, when carried into effect by the terms and conditions of the judgment attached to and made a part of it, will constitute a compromise and settlement of a controversy affecting the ownership and use of water and water rights as contemplated by such section, and the section constitutes a valid legislative sanction of the procedure adopted by petitioner in the trial court.

## II

Respondent urges that the clear implication of the stipulation is that the Upper District, in exchange for its obligation to cause 98,415 acre-feet of water to be available to Lower Area users, is obtaining a relinquishment of all rights that Lower Area parties may have, vis-a-vis Upper Area parties, in the natural waters of the San Gabriel River system, whether as riparian owners, overlying owners or appropriators, and that to the extent that the stipulation would divest the persons represented by petitioner Central Municipal of their water rights, it is invalid. He urges further that the extraordinary power to divest private citizens of their property rights in the absence of an exercise of the power of eminent domain, is obviously not expressly granted to the district and is, therefore, available only if it can be implied from the grant of power to compromise actions pursuant to the provisions of section 71751 of the Water Code. The answer to this is contained within the four corners of the stipulation and proposed judgment. These documents do not purport to deprive any individual of a property right, but on the contrary disclose a careful and concerted effort on the part of the litigants to conserve and protect the individual rights to the use of water within the watershed, where the need for such water is growing and the supply is limited. The provisions of the stipulation and proposed judgment have not been arrived at by guess and speculation, but on the contrary according to the memorandum of points and authorities of amici curiae in support of the petition,[1]

---

[1] Filed on behalf of the Cities of Arcadia, Covina, El Monte, Glendora, Monrovia and South Pasadena, Baldwin Park County Water District, San Gabriel County Water District, Azusa Valley Water Company, California Cities Water Company, California Water & Telephone Company, Covina Irrigating Company, East Pasadena Water Co., Ltd., Glendora

since May of 1959, when the action was commenced, there have been constant studies and negotiations toward settlement. Negotiating committees of five men each were appointed for the plaintiffs and for the defendants represented by amici curiae. These committees met together on 45 different occasions. In addition, there were literally hundreds of conferences both between opposing counsel and among the attorneys and experts on both sides. Further there were almost continuous studies of various aspects of the hydrologic picture. Expenses involved in arriving at the settlement represented by the stipulation and proposed judgment are estimated to exceed $300,000 disregarding the value of the time devoted by members of the negotiating committees. It cannot be said that prolonged and costly litigation on the same subject would result in any different or better solution than the physical solution arrived at and contained in the stipulation and proposed judgment. Furthermore, the proposed judgment, in paragraph 15, provides in part ''Full jurisdiction, power and authority is retained and reserved by the Court for the purpose of enabling the Court upon application of any party by motion and upon at least thirty (30) days notice thereof, and after hearing thereon (i) to make such further or supplemental orders or directions as may be necessary or appropriate for the construction, enforcement or carrying out of this Judgment, and (ii) to modify, amend or amplify any of the provisions of this Judgment whenever substantial changes or developments affecting the physical, hydrological or other conditions dealt with herein may, in the Court's opinion, justify or require such modifications, amendment or amplification. . . .'' Certainly, a determination of individual rights is deferred or suspended so long as the physical solution shall continue in effect. However, the proposed judgment does not by its terms or by implication eliminate or impair whatever rights the Lower Area parties may now have, even though it does not pass upon them so long as they are being taken care of by the physical solution. ▆ The adoption by the parties of a reasonable physical solution to the complicated problems relating to their respective rights in the use of the water within the San Gabriel River system is in accord with the rule laid down in *City of Lodi* v. *East Bay Mun. Utility Dist.*,

Irrigating Company, San Gabriel Valley Water Company, Southern California Water Company, Suburban Water Systems and Vallecito Water Co.

7 Cal.2d 316, 341 [60 P.2d 439], wherein the court said "Other suggestions as to possible physical solutions were made during the trial. The trial court apparently took the view that none of them could be enforced by it unless the interested parties both agreed thereto. That is not the law. Since the adoption of the 1928 constitutional amendment [art. XIV, § 3], it is not only within the power but it is also the duty of the trial court to admit evidence relating to possible physical solutions, and if none is satisfactory to it to suggest on its own motion such physical solution." In the present action all parties thereto have agreed to the proposed physical solution.

The propriety of the resolution of complex problems relating to conflicting claims to the right to use water, by the adoption of a physical solution of such problems was also approved in the case of *Rancho Santa Margarita* v. *Vail,* 11 Cal.2d 501, 558-562 [81 P.2d 533].

The proposed judgment also provides in part (Declaration of Right, paragraph 4); ". . . If in the future a court of competent jurisdiction shall decree that any person downstream from Whittier Narrows within Central and West Basin Water Replenishment District who is not bound by this Judgment, shall have, as against Upper Area Parties and substantially all other pumpers in the San Gabriel Valley, a right to receive from Upper Area a stated amount of usable supply consisting of Surface Flow, Subsurface Flow, Export to Lower Area or Make-up Water, which right arose out of and is based upon the ownership of land or the production of water downstream from Whittier Narrows and within Central and West Basin Water Replenishment District, then and in that event the stated amount of such right so decreed shall not increase the declared right as set forth in this paragraph 4 [Note: The right of Lower Area parties and all other persons downstream from Whittier Narrows, who receive water from the San Gabriel River system or have rights in and to such water, to receive from Upper Area an average annual usable supply of 98,415 acre-feet]; and the receipt of water from Upper Area by such person in such stated amount or portion thereof, consisting of Surface Flow, Subsurface Flow, Export to Lower Area or Make-up Water, shall be deemed a partial satisfaction of such declared right." This provision tends to preserve to an individual the privilege to establish, in a proper case, his right to use a specified quantity of water, rather than to destroy such right. ■ Where a judgment provides for a physical solution of the rights of litigants to the use

of water, and includes therein appropriate flexibility to meet pertinent changes and developments, it is proper that a trial court should retain jurisdiction over such decree. (*City of Pasadena* v. *City of Alhambra*, 33 Cal.2d 908, 937 [207 P.2d 17].)

III

Respondent claims that the stipulation for judgment is invalid because such an agreement is beyond the powers granted by law to the Upper San Gabriel Valley Municipal Water District, in that (a) the Upper District cannot contract to furnish water outside its boundaries and (b) the Upper District is not authorized to contract in a manner that would involve the use of public funds for private benefit.

As to proposition (a), section 71611 of the Water Code provides ''A district may sell water under its control, without preference, to cities, other public corporations and agencies, and persons, within the district for use within the district.'' Section 71612 of the Water Code provides ''Whenever the board finds that there is a surplus of water above that which may be required by consumers within the district, the district may sell or otherwise dispose of such surplus water to any persons, public corporations or agencies, or other consumers.'' It is upon these sections that respondent relies as prohibiting the Upper San Gabriel Valley Municipal Water District from entering into the stipulation. These sections impose restrictions upon the sale of water under normal operating conditions. The litigation, stipulation and proposed judgment here under consideration have a much broader aspect. The action below raises issues as to the right of the district to water within the San Gabriel River system. Also the complaint asserts rights in the plaintiffs to water within such system paramount to the rights of the defendants therein named, including the defendant Upper San Gabriel Valley Municipal Water District; and, therefore, in a broad sense, questions the right of the district to function as such. Whatever limitations there may be on the district's power to supply other than certain enumerated areas with water, it is clear that if, in order to operate its project at all, water must be furnished to a prior claimant, the district possesses the implied power so to furnish the water. (*City of Lodi* v. *East Bay Mun. Utility Dist., supra,* 7 Cal.2d 316, 341.)

As to proposition (b), respondent asserts that the stipulation and proposed judgment is in violation of article IV, section 31, of the California Constitution, in that it authorizes

the use of public funds for private benefit. He claims in this regard that the Upper District is attempting to incur not only the primary obligation to furnish water or pay money to the Central Municipal, but has incurred and presumably will continue to incur substantial expense in connection with this litigation and the implementation of the stipulation for judgment to the direct benefit of the other defendants. We assume that respondent has reference to the provisions of paragraph 5 of the judgment wherein specific obligations are set forth dealing with the physical solution, and which impose certain obligations upon Upper District in the way of accounting, providing Make-up Water or to pay Central Municipal for the benefit of all Lower Area parties for the expense of reclaiming water or for the purchase of reclaimed water. Respondent does not make it clear as to how this provision of the Constitution should apply to the problem here. ■ This provision is a limitation upon the power of the Legislature to make or authorize the making of a gift of public funds for the benefit of a private person. ■ The prime object and purpose of the stipulation and proposed judgment insofar as it relates to Upper District is to preserve to the district and its inhabitants the right to use waters within the San Gabriel River system. This obviously is a public purpose and is for the benefit of the district and its inhabitants, and the fact that it may benefit others is incidental. ■ It is well settled that funds directed toward a public purpose are not within the constitutional prohibition merely because of incidental benefits to individuals. (*American Co.* v. *City of Lakeport,* 220 Cal. 548, 556 [32 P.2d 622]; *Patrick* v. *Riley,* 209 Cal. 350, 357-358 [287 P. 455].) ■ Furthermore, the Legislature is vested with a large discretion in determining what is for the public good and what are public purposes for which public moneys can be rightfully expended and that discretion cannot be controlled by the courts, except when its action is clearly evasive. (*People* v. *Standard Acc. Ins. Co.,* 42 Cal.App.2d 409, 414 [108 P.2d 923].) In addition, a contract of reimbursement has been entered into between the Upper San Gabriel Valley Municipal Water District (Upper District) and other defendants in the action below whereby Upper District will be reimbursed for expenses incurred by the latter pursuant to the obligations assumed by it under the terms of the stipulation and proposed judgment. Such contract is incorporated herein and is attached hereto as Appendix 3. ■ Under the circumstances here presented neither

the stipulation nor the proposed judgment violates article IV, section 31, of the California Constitution.

## IV

 Respondent next urges that the stipulation for judgment is invalid as an unreasonable and arbitrary exercise of governmental power. He argues that whatever may be the scope of the power of municipal water districts to compromise lawsuits, that power, like any governmental power, cannot be exercised in a way that is unreasonable, arbitrary or capricious in its effect on private rights. He claims that paragraph 4 of the so-called ''Declaration of Right'' of the proposed stipulation for judgment indicates most clearly the arbitrariness and unreasonableness of this stipulation. He says that Lower Area parties are declared to have rights of unknown nature and scope in the water supply of the San Gabriel River system; but the substituted exchange for those rights—in essence the Upper District's obligation to make 98,415 acre-feet of water available annually to downstream users—runs to Lower Area parties and all other persons downstream from Whittier Narrows who receive or have rights in water of the San Gabriel River system. He asserts that these other persons include water users in the West Basin who are not represented in the action and who clearly would not be bound by any judgment entered therein. He claims that if such persons, in a subsequent action, successfully assert a right against Upper Area parties to receive water through Whittier Narrows, the water they would be entitled to receive would be deducted from the 98,415 acre-feet entitlement of the Lower Area parties, and thus the petitioner is attempting to relinquish the water rights of its inhabitants without ever ascertaining the nature and extent of those rights sufficiently to even make a contention as to their scope, and to accept in exchange a contractual obligation that, by its terms, could be reduced to an unknown amount by a successful claim against the Upper Area by other users of water from the San Gabriel River system.

In this contention, respondent has overlooked the fact that the quantity of 98,415 acre-feet of water which flows from the Upper Area through the Whittier Narrows to the Lower Area has been determined to be the average quantity of water per year to be expected, and this figure has been arrived at by constant study over a period of several years by competent and skilled engineers. The methods used to arrive at this figure cannot be said to be unreasonable,

arbitrary or capricious. Furthermore, it is not unreasonable to assume that, after prolonged litigation, the trial court would arrive at a figure substantially the same as that used by the parties to the stipulation and proposed judgment in their effort to arrive at a practical solution of their problem. It is also reasonable to assume that after such a prolonged and careful study of the hydrology of the area by the various water districts, water companies and municipal corporations, through their personnel, skilled engineers, and attorneys, they have accurately assessed the rights of other users, not parties to the action, so as to minimize the possibility of the loss of water to their inhabitants in the manner posed by respondent. We find nothing invalid, unreasonable, arbitrary or capricious in the provisions contained in the stipulation and proposed judgment.

V

Next, respondent urges that the stipulation for judgment is invalid because such an agreement is beyond the powers granted to the City of Long Beach by its charter.[2] He does not question the right of the board of water commissioners to bring and maintain the action below on behalf of the city without the authority of the electorate, even though a judgment rendered therein after a protracted and costly trial might result in a disposal in whole or in part of water rights claimed to be vested in the city. Subdivision (7) of section 217 of the charter gives the board of water commissioners the right ''To sue and be sued in the name of said Board, and to exercise *complete control* over all litigation wherein it is involved, or which pertains to any matters within the jurisdiction of said Board; . . .'' (Italics added.) To require the

[2] ''The City of Long Beach shall continue in the ownership and enjoyment of all water and water rights vested in it, and ownership of the right to develop, economize, control, use, conserve, and utilize all water flowing or being beneath the surface of any and all lands now owned or that may be hereafter acquired by it. No water or water rights now or hereafter owned or controlled by the city, shall ever be sold, leased or disposed of, in whole or in part, without the assent of two-thirds of the qualified voters of the city, voting on the proposition at a general or special election, at which such proposition shall be lawfully submitted, and no water shall ever be sold, supplied or distributed to any person or corporation other than municipal, for resale, rental or disposal to consumers or other persons. Provided that nothing in this section contained shall be construed to prevent the ordinary sale and distribution by the city of water to its inhabitants for their own use, or to prevent the supplying or distribution by the city of surplus water to consumers or municipal corporations outside of the city, as elsewhere in this article provided.'' Charter of the City of Long Beach, California, section 216d, Amendment of 1933.

board to obtain the consent of two-thirds of the qualified voters of the city each time it became necessary to make some concession or compromise in litigation in which the board is involved would not only deprive the board of its right to exercise complete control over the litigation, as is granted by the provisions of subdivision (7) of section 217 of the charter, but would set up conditions which are unreasonable and unworkable. The compromise and settlement of the action below, by means of a practical solution as posed by the stipulation, proposed judgment and contract of reimbursement is not such a disposal of water or water rights owned or controlled by the city as would require the consent of the voters of the city in order to give it vitality. The purpose of the action below and of the compromise and settlement of it is to secure water and water rights in gross to the inhabitants of the City of Long Beach, not to dispose of them. The provisions of section 216d of the Charter of the City of Long Beach have no application to the situation here and are not a bar to the board of water commissioners in proceeding to a reasonable compromise and settlement of the litigation, on behalf of the City of Long Beach.

 It is the policy of the law to discourage litigation and to favor compromise and voluntary settlements of doubtful rights and controversies, made either in or out of court. (*People* ex rel. *Dept. Public Works* v. *Forster*, 58 Cal.2d 257, 263 [23 Cal.Rptr. 582, 373 P.2d 630]; *Potter* v. *Pacific Coast Lumber Co.*, 37 Cal.2d 592, 602-603 [234 P.2d 16]; *Pettie* v. *Superior Court*, 178 Cal.App.2d 680, 689 [3 Cal.Rptr. 267]; *Hamilton* v. *Oakland School Dist.*, 219 Cal. 322, 329 [26 P.2d 296]; *Estate of Green*, 138 Cal.App.2d 211, 215 [292 P.2d 651].)

The efforts of the parties to the action pending in the trial court to compromise and settle their differences by entering into the stipulation for judgment is in full accord with the policy of the law, and we find no legal obstacle which would stand in the way of the parties entering into and being bound by their agreement of compromise as evidenced by such stipulation.

The stipulation and proposed judgment are incorporated herein and are attached as appendices 1 and 2.

Let the peremptory writ issue as prayed.

Wood, P. J., and Lillie, J., concurred.

## Appendix 1

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| BOARD OF WATER COMMISSIONERS OF THE CITY OF LONG BEACH, a municipal corporation; CENTRAL BASIN MUNICIPAL WATER DISTRICT, a municipal water district; and CITY OF COMPTON, a municipal corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>SAN GABRIEL VALLEY WATER COMPANY, a corporation; AZUSA AGRICULTURAL WATER COMPANY, a corporation; AZUSA VALLEY WATER COMPANY, a corporation; CALIFORNIA CITIES WATER COMPANY, a corporation; CALIFORNIA WATER & TELEPHONE COMPANY, a corporation; COVINA IRRIGATING COMPANY, a corporation; CROSS WATER COMPANY, a corporation; EAST PASADENA WATER CO. LTD., a corporation; GLENDORA IRRIGATING COMPANY, a corporation; SOUTHERN CALIFORNIA WATER COMPANY, a corporation; SUBURBAN WATER SYSTEMS, a corporation; SUNNY SLOPE WATER CO., a corporation; VALLECITO WATER CO., a corporation; CITY OF ALHAMBRA, a municipal corporation; CITY OF ARCADIA, a municipal corporation; CITY OF AZUSA, a municipal corporation; CITY OF COVINA, a municipal corporation; CITY OF EL MONTE, a municipal corporation; CITY OF GLENDORA, a municipal corporation; CITY OF MONROVIA, a municipal corporation; CITY OF MONTEREY PARK, a municipal corporation; CITY OF SOUTH PASADENA, a municipal corporation; BALDWIN PARK COUNTY WATER DISTRICT, a county water district; and SAN GABRIEL COUNTY WATER DISTRICT, a county water district,<br><br>Defendants,<br><br>UPPER SAN GABRIEL VALLEY MUNICIPAL WATER DISTRICT, a municipal water district, and CALIFORNIA DOMESTIC WATER COMPANY, a corporation,<br><br>Intervenors. | No. 722,647<br><br><br>STIPULATION<br><br>FOR<br><br>JUDGMENT |

Plaintiffs Central Basin Municipal Water District, a municipal water district (herein sometimes referred to as Central Municipal); City of Long Beach, a municipal corporation, acting by and through the Board of Water Commissioners of the City of Long Beach; and City of Compton, a municipal corporation; and defendants City of Alhambra, a municipal corporation; City of Arcadia, a municipal corporation; City of Azusa, a municipal corporation; Azusa Agricultural Water Company, a corporation, sued herein as DOE 1; Azusa Valley Water Company, a corporation, for itself and as successor by merger to Azusa Irrigating Company, a corporation; Baldwin Park County Water District, a county water district; California Cities Water Company, a corporation (successor by merger to Columbia Land and Water Company, a corporation, and to San Dimas Water Company, a corporation, sued herein as DOE 3); California Water and Telephone Company, a corporation; City of Covina, a municipal corporation; Covina Irrigating Company, a corporation; Cross Water Company, a corporation, sued herein as DOE 2; East Pasadena Water Company, Ltd., a corporation, for itself and as successor by merger to California-Michigan Land and Water Company, a corporation; City of El Monte, a municipal corporation; City of Glendora, a municipal corporation; Glendora Irrigating Company, a corporation; City of Monrovia, a municipal corporation; City of Monterey Park, a municipal corporation; San Gabriel County Water District, a county water district; San Gabriel Valley Water Company, a corporation; Southern California Water Company, a corporation; City of South Pasadena, a municipal corporation; Suburban Water Systems, a corporation; Sunny Slope Water Company, a corporation; and Vallecito Water Company, a corporation; and intervening defendant Upper San Gabriel Valley Municipal Water District, a municipal water district (herein sometimes referred to as Upper District); and intervening defendant California Domestic Water Company, a corporation; stipulate and agree as follows:

1. A Judgment in the form attached hereto as Exhibit I may be made and entered by the Court in the above-entitled action.

2. The following facts, considerations and objectives among others, provide the basis for this Stipulation for Judgment:

(a) By their complaint plaintiffs seek a determination of the rights of the defendants, other than Upper Dis-

trict, in and to the waters of the San Gabriel River System and further seek to restrain defendants, other than Upper District, from an alleged interference with the rights of plaintiffs and persons represented by Central Municipal in and to said waters.

(b) At the present time, and for some time prior to the commencement of this action, the water supply of the San Gabriel River System has been inadequate to supply the diversions and extractions of both plaintiffs and defendants other than Central Municipal and Upper District but including the persons represented by Central Municipal and by Upper District, and as a result said diversions and extractions have exceeded, and still exceed, the natural replenishment of the water supply of the San Gabriel River System.

(c) The parties recognize and agree that the natural outflow from the San Gabriel Valley to the Lower Area as defined in the Judgment has varied, and will vary from year to year, depending on the amount of precedent rainfall and other conditions.

(d) The parties recognize and agree that there is a need for a declaration of rights and a physical solution for the problems resulting from the inadequate and varying water supplies of the San Gabriel River System.

(e) The parties agree that the physical solution contained in said Judgment will bring about a fair division of the water of the San Gabriel River System as between plaintiffs and defendants other than Central Municipal and Upper District but including the persons represented by Central Municipal and by Upper District.

(f) The parties recognize that it may be necessary for defendants or some of them to use supplemental water in order to comply with the obligations imposed under said physical solution.

(g) Defendant Upper District is now a member unit of The Metropolitan Water District of Southern California, which will be supplied with water from sources in northern California under an existing contract with the State of California. Certain of the defendants not within the area of defendant Upper District are within the area of San Gabriel Valley Municipal Water District, which district also has contracted with the State of

California for delivery of water from sources in northern California. It is anticipated that the importation of this water will augment the natural supply of ground water within Upper Area as defined in the Judgment. Defendant Upper District intends to replenish the San Gabriel Valley with supplemental supplies.

3. The parties hereto hereby waive any and all Findings of Fact, Conclusions of Law, and any and all notice of the making or entry herein of the attached form of Judgment, and all rights of appeal, if any, from such Judgment.

4. Plaintiffs and defendants agree that during the period prior to entry of the attached form of Judgment, they will cooperate in endeavoring to collect such information as the Watermaster would obtain if the attached form of Judgment had been entered and the Watermaster had been appointed by the Court pursuant to paragraph 6 of the Judgment, which information is herein referred to as "said information." To that end, the parties hereto hereby agree that promptly following the complete execution of this stipulation by all parties, Upper District and Central Municipal shall each notify the other in writing as to the identity of the person who it expects will be nominated as the representative of Upper Area Parties or Lower Area Parties, as the case may be, under paragraph 6 of the Judgment. Upon receiving such notice, Upper District and Central Municipal shall each instruct its designated nominee that until the attached form of Judgment is entered and the Watermaster has been appointed pursuant to paragraph 6 of the Judgment he shall in cooperation with the other designated nominee do all things reasonably necessary to obtain such of said information as is available from the parties hereto or any public agency.

5. Judgment shall not be rendered pursuant hereto unless and until the execution of this stipulation by Central Basin Municipal Water District and by Upper San Gabriel Valley Municipal Water District shall have been validated by a decree or decrees rendered in a proceeding or proceedings instituted in a court of competent jurisdiction of the State of California, and either such decree or decrees shall have become final or both of said Districts shall have further stipulated that said Judgment shall be rendered.

6. This stipulation may be executed in counterparts (each counterpart being an exact copy or duplicate of the original)

and all counterparts collectively shall be considered as constituting one complete Stipulation for Judgment.

DATED: February 10, 1965.

*Attorneys*

| (for the respective party listed opposite and to the right of the respective attorneys listed below) | Signature of Stipulating Party and Its Designation of Mailing Address |
|---|---|
| LEONARD PITNAM<br>City Attorney<br>CLIFFORD E. HAYES<br>Principal Deputy City Attorney<br>City of Long Beach | BOARD OF WATER COMMISSIONERS OF THE CITY OF LONG BEACH<br><br>By /s/ FRED S. DEAN<br><br>Its_____President |
| By /s/ CLIFFORD S. HAYES | By /s/ HELEN L. PENLAND<br><br>Its_____Secretary |
| BURRIS & LAGERLOF<br>STANLEY C. LAGERLOF<br>H. JESS SENECAL<br>JACK T. SWAFFORD<br><br>By /s/ STANLEY C. LAGERLOF | 1800 East Wardlow Road<br>Long Beach 7, California |
| BURRIS & LAGERLOF<br>STANLEY C. LAGERLOF<br>H. JESS SENECAL<br>JACK T. SWAFFORD<br><br>By /s/ STANLEY C. LAGERLOF | CENTRAL BASIN MUNICIPAL WATER DISTRICT<br><br>By /s/ MILO DELLMAN<br><br>Its President<br><br>By /s/ CARL FOSSETT<br><br>Its Secretary<br><br>7439 East Florence Avenue<br>Downey, California |
| LLOYD A. BULLOCH<br>City Attorney<br>City of Compton<br><br>/s/ LLOYD A. BULLOCH | CITY OF COMPTON<br><br>By /s/ CHESTER R. CRAIN<br><br>Its Mayor |
| BURRIS & LAGERLOF<br>STANLEY C. LAGERLOF<br>H. JESS SENECAL<br>JACK T. SWAFFORD<br><br>By /s/ STANLEY C. LAGERLOF | 205 South Willowbrook Avenue<br>Compton, California |

*Attorneys*

| | |
|---|---|
| (for the respective party listed opposite and to the right of the respective attorneys listed below) | Signature of Stipulating Party and Its Designation of Mailing Address |

DON D. BERCU
City Attorney
City of Alhambra

/s/ DON D. BERCU

CITY OF ALHAMBRA

By /s/ NORMA L. YOCUM

Its Mayor

/s/ WILLIAM F. LONGLEY

City Auditor-Clerk

TAYLOR & SMITH

By /s/ EDWARD F. TAYLOR

City Hall
111 South First Street
Alhambra, California

JAMES A. NICKLIN
City Attorney
City of Arcadia

/s/ JAMES A. NICKLIN

CITY OF ARCADIA

By /s/ DALE E. TURNER

Its Mayor

SURR & HELLYER

By /s/ JOHN B. SURR

City Hall
Arcadia, California

CLAYSON, STARK, ROTHROCK
& MANN

By /s/ DONALD D. STARK

HARRY C. WILLIAMS
City Attorney
City of Azusa

/s/ HARRY C. WILLIAMS

CITY OF AZUSA

By /s/ LOUIS G. MEMMESHEIMER

Its Mayor

TAYLOR & SMITH

By /s/ EDWARD F. TAYLOR

City Hall
213 East Foothill Boulevard
Azusa, California

TAYLOR & SMITH

By /s/ EDWARD F. TAYLOR

AZUSA AGRICULTURAL WATER
COMPANY

By /s/ HICKORY S. JACKSON

Its_____President

By /s/ D. H. McKELLAR

Its_____Secretary

18352 East Foothill Boulevard
Azusa, California

712

*Attorneys*
(for the respective party listed opposite and to the right of the respective attorneys listed below)

Signature of Stipulating Party and Its Designation of Mailing Address

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK & MANN

By /s/ DONALD D. STARK

AZUSA VALLEY WATER COMPANY

By /s/ ELBERT B. GRIFFITTS

Its_____President

By /s/ IRA R. CALVERT

Its_____Secretary

P. O. Box "W"
Azusa, California

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK & MANN

By /s/ DONALD D. STARK

BALDWIN PARK COUNTY WATER DISTRICT

By /s/ ROY W. JUDD

Its_____President

By /s/ RALPH B. HELM

Its_____Secretary

14521 East Ramona Boulevard
Baldwin Park, California

ALLARD, SHELTON & O'CONNOR

By /s/ L. A. SHELTON

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK & MANN

By /s/ DONALD D. STARK

BACIGALUPI, ELKUS & SALINGER

By /s/ TADINI BACIGALUPI

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK & MANN

By /s/ DONALD D. STARK

CALIFORNIA CITIES WATER COMPANY

By /s/ DONALD R. O'NEILL

Its Vice-President

By /s/ ROBERT W. BRUCE

Its Asst. Secretary

P. O. Box 188
San Dimas, California

CALIFORNIA WATER & TELEPHONE COMPANY

By /s/ W. J. HAYS

Its Vice President

2020 Santa Monica Blvd.
Santa Monica, California

| *Attorneys* | Signature of Stipulating Party |
|---|---|
| (for the respective party listed opposite and to the right of the respective attorneys listed below) | and Its Designation of Mailing Address |

ALLARD, SHELTON & O'CONNOR

By /s/ L. A. SHELTON

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, RÓTHROCK
 & MANN

By /s/ DONALD D. STARK

KERCKHOFF & KERCKHOFF

By /s/ ANTON W. KERCKHOFF

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK
 & MANN

By /s/ DONALD D. STARK

GEORGE C. GILLETTE

/s/ GEO. C. GILLETTE

GRAY & MADDOX

By /s/ FRANK E. GRAY

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK
 & MANN

By /s/ DONALD D. STARK

---

CITY OF COVINA

By /s/ OSCAR G. YAEGER

Its Mayor

City Hall
Covina, California

COVINA IRRIGATING COMPANY

By /s/ VERNE JOBE

Its_____President

By /s/ FAYE D. FERGUSON

Its_____Secretary

146 East College Street
Covina, California

CROSS WATER COMPANY

By /s/ JOHN FERRERO

Its_____President

By /s/ H. L. SMITH

Its_____Secretary

15825 East Main Street
La Puente, California

EAST PASADENA WATER
 COMPANY, LTD.

By /s/ CAMILLE A. GARNIER

Its_____President

By /s/ ROGER G. ETTER

Its Assist. Secretary

269 South Rosemead
Pasadena, California

*Attorneys*

| | |
|---|---|
| (for the respective party listed opposite and to the right of the respective attorneys listed below) | Signature of Stipulating Party and Its Designation of Mailing Address |

JAMES A. NICKLIN
City Attorney
City of El Monte

/s/ JAMES A. NICKLIN

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK
 & MANN

By /s/ DONALD D. STARK

LEONARD A. SHELTON

/s/ LEONARD A. SHELTON

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK
 & MANN

By /s/ DONALD D. STARK

ALLARD, SHELTON & O'CONNOR

By /s/ L. A. SHELTON

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK
 & MANN

By /s/ DONALD D. STARK

HOMER H. BELL
City Attorney
City of Monrovia

/s/ HOMER H. BELL

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK
 & MANN

By /s/ DONALD D. STARK

---

CITY OF EL MONTE

By /s/ CHARLES E. WIGGINS

Its Mayor

City Hall
El Monte, California

CITY OF GLENDORA

By /s/ JOE M. FINKBINER

Its Mayor

City Hall
Glendora, California

GLENDORA IRRIGATING COMPANY

By /s/ C. F. GORDON

Its_____President

By /s/ O. J. HAMMER

Its_____Secretary

224 North Michigan Avenue
Glendora, California

CITY OF MONROVIA

By /s/ ROY S. KROPKE

Its Mayor

City Hall
Monrovia, California

| | |
|---|---|
| *Attorneys* | |
| (for the respective party listed opposite and to the right of the respective attorneys listed below) | Signature of Stipulating Party and Its Designation of Mailing Address |

CHARLES R. MARTIN
City Attorney
City of Monterey Park

/s/ CHARLES R. MARTIN

CITY OF MONTEREY PARK

By /s/ WILLIAM M. ERAMBERT

Its Mayor

City Hall
320 West Newmark Avenue
Monterey Park, California

TAYLOR & SMITH

By /s/ EDWARD F. TAYLOR

SURR & HELLYER

By /s/ JOHN B. SURR

SAN GABRIEL COUNTY WATER
DISTRICT

By /s/ ROBERT S. BRUMMETT

Its_____President

CLAYSON, STARK, ROTHROCK
& MANN

By /s/ DONALD D. STARK

By /s/ LUPIE PETERS

Its_____Secretary

829 East Las Tunas Drive
San Gabriel, California

J. E. SKELTON

/s/ J. E. SKELTON

SAN GABRIEL VALLEY WATER
COMPANY

By /s/ M. E. MOSELEY

Its_____President

SURR & HELLYER

By /s/ JOHN B. SURR

By /s/ C. H. PALMER

Its_____Secretary

CLAYSON, STARK, ROTHROCK
& MANN

By /s/ DONALD D. STARK

11142 Garvey Avenue
El Monte, California

O'MELVENY & MYERS

By /s/ LAUREN M. WRIGHT

SOUTHERN CALIFORNIA WATER
COMPANY

By /s/ PHILIP F. WALSH

Its_____President

SURR & HELLYER

By /s/ JOHN B. SURR

By /s/ W. C. WELMOR

Its_____Secretary

CLAYSON, STARK, ROTHROCK
& MANN

By /s/ DONALD D. STARK

11911 South Vermont Avenue
Los Angeles 44, California

| *Attorneys*<br>(for the respective party listed opposite and to the right of the respective attorneys listed below) | Signature of Stipulating Party and Its Designation of Mailing Address |
|---|---|

CHARLES R. MARTIN
City Attorney
City of South Pasadena

/s/ CHARLES R. MARTIN

CITY OF SOUTH PASADENA

By /s/ BURTON E. JONES

Its Mayor

825 Mission Street
South Pasadena, California

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK
 & MANN

By /s/ DONALD D. STARK

FRANK E. GRAY

/s/ FRANK E. GRAY

SURR & HELLYER

By /s/ JOHN B. SURR

CLAYSON, STARK, ROTHROCK
 & MANN

By /s/ DONALD D. STARK

SUBURBAN WATER SYSTEMS

By /s/ CAMILLE A. GARNIER

Its_____President

By /s/ C. H. DEITZ

Its_____Secretary

16340 East Maplegrove Street
La Puente, California

HAHN & HAHN

By /s/ ALLYN H. BARBER

SUNNY SLOPE WATER COMPANY

By /s/ ROBT. T. CLARY

Its_____President

By /s/_____

Its_____Secretary

1040 El Campo Drive
Pasadena, California

| *Attorneys*<br>(for the respective party listed opposite and to the right of the respective attorneys listed below) | Signature of Stipulating Party and Its Designation of Mailing Address |
|---|---|
| SURR & HELLYER | VALLECITO WATER COMPANY |
| By /s/ JOHN B. SURR | By /s/ CAMILLE A. GARNIER |
| | Its_____President |
| CLAYSON, STARK, ROTHROCK & MANN | |
| By /s/ DONALD D. STARK | By /s/ WM. ROBY |
| | Its_____Secretary |
| | 749 South Ninth Avenue<br>City of Industry, California |
| STEARNS, GROSS AND MOORE | CALIFORNIA DOMESTIC WATER COMPANY |
| By /s/ THOMAS B. MOORE | By /s/ FRED M. ANDERSON |
| | Its_____President |
| | By /s/ CAMILLE A. GARNIER |
| | Its_____Secretary |
| | P. O. Box 1026, Perry Annex<br>Whittier, California |
| HELM & BUDINGER | UPPER SAN GABRIEL VALLEY MUNICIPAL WATER DISTRICT |
| By /s/ RALPH B. HELM | By /s/ FRANK E. VACHON |
| | Its_____President |
| | By /s/ HOWARD H. HAWKINS |
| | Its_____Secretary |
| | 11229 East Valley Boulevard<br>El Monte, California |

## Appendix 2

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES

BOARD OF WATER COMMISSIONERS OF THE CITY OF LONG BEACH, a municipal corporation; CENTRAL BASIN MUNICIPAL WATER DISTRICT, a municipal water district; and CITY OF COMPTON, a municipal corporation,

Plaintiffs,

vs.

SAN GABRIEL VALLEY WATER COMPANY, a corporation; AZUSA AGRICULTURAL WATER COMPANY, a corporation; AZUSA VALLEY WATER COMPANY, a corporation; CALIFORNIA CITIES WATER COMPANY, a corporation; CALIFORNIA WATER & TELEPHONE COMPANY, a corporation; COVINA IRRIGATING COMPANY, a corporation; CROSS WATER COMPANY, a corporation; EAST PASADENA WATER CO. LTD., a corporation; GLENDORA IRRIGATING COMPANY, a corporation; SOUTHERN CALIFORNIA WATER COMPANY, a corporation; SUBURBAN WATER SYSTEMS, a corporation; SUNNY SLOPE WATER CO., a corporation; VALLECITO WATER CO., a corporation; CITY OF ALHAMBRA, a municipal corporation; CITY OF ARCADIA, a municipal corporation; CITY OF AZUSA, a municipal corporation; CITY OF COVINA, a municipal corporation; CITY OF EL MONTE, a municipal corporation; CITY OF GLENDORA, a municipal corporation; CITY OF MONROVIA, a municipal corporation; CITY OF MONTEREY PARK, a municipal corporation; CITY OF SOUTH PASADENA, a municipal corporation; BALDWIN PARK COUNTY WATER DISTRICT, a county water district; and SAN GABRIEL COUNTY WATER DISTRICT, a county water district,

Defendants,

UPPER SAN GABRIEL VALLEY MUNICIPAL WATER DISTRICT, a municipal water district, and CALIFORNIA DOMESTIC WATER COMPANY, a corporation,

Intervenors.

No. 722,647

JUDGMENT

The original complaint herein was filed by Plaintiffs on May 12, 1959, and an amended complaint was filed herein on June 8, 1961. Each Defendant in this action filed an answer to the amended complaint denying the material allegations therein. Heretofore, Upper San Gabriel Valley Municipal Water District, a municipal water district, and California Domestic Water Company, a corporation, have intervened in the action as Defendants. There has been filed herein a Stipulation for Judgment signed by all of the parties to this action.

After due examination and consideration of the pleadings, said Stipulation for Judgment and other documents and papers on file herein, it appears to the Court that:

(a) In bringing and maintaining this action, plaintiff Central Basin Municipal Water District, a municipal water district, has done so as a representative of and for the benefit of all owners of water rights within, all owners of land within, and all inhabitants of, the district, except to the extent that defendant California Domestic Water Company is representing itself.

(b) In intervening in this action, defendant Upper San Gabriel Valley Municipal Water District, a municipal water district, has done so as a representative of and for the benefit of all owners of water rights within, all owners of land within, and all inhabitants of, the district, except to the extent that other Defendants who are within the district are representing themselves.

(c) There is a need for a physical solution to the complex water problems which have given rise to this action.

(d) The physical solution embodied in this Judgment is a feasible, equitable and just resolution of the issues presented by the amended complaint and answers thereto on file herein, and it will bring about a fair division of the water supply of the San Gabriel River System between Upper Area and Lower Area, as those terms are hereinafter defined.

(e) On the basis of the Stipulation for Judgment filed herein and the consent of all Plaintiffs and Defendants it is in the interests of justice and in furtherance of the water policy of the State of California to proceed without trial and to make and enter this Judgment.

Now, therefore, it is hereby ORDERED, ADJUDGED AND DECREED:

JURISDICTION

1. The Court has jurisdiction of the subject matter of this action and of the Upper Area Parties and Lower Area Parties, as those terms are hereinafter defined.

EXHIBITS*

2. The following Exhibits marked A and B, are attached to this Judgment and made a part hereof:

(a) Exhibit A—Map entitled "Rio Hondo and San Gabriel River in Vicinity of Whittier Narrows Dam."

(b) Exhibit B—Engineering Appendix.

DEFINITIONS

3. As used in this Judgment, the following terms shall have the meanings assigned to them:

(a) Central Municipal—Central Basin Municipal Water District.

(b) Upper District—Upper San Gabriel Valley Municipal Water District.

(c) Lower Area Parties—the Plaintiffs, and all persons, firms and corporations, public or private, who are represented by Central Municipal.

(d) Upper Area Parties—the Defendants, and all persons, firms and corporations, public or private, who are represented by Upper District.

(e) Upper Area—the area (exclusive of the Raymond Basin and the portion of San Gabriel Mountains tributary thereto) wherein surface and subsurface waters are tributary to Whit-

---

*The map, Exhibit A, and the Engineering Appendix referred to in paragraph 2 of the proposed judgment are not included in this Appendix 2.

tier Narrows upstream from the common boundary of Upper District and Central Municipal through Whittier Narrows.

(f) Lower Area—the area which lies downstream from the common boundary of Central Municipal and Upper District through Whittier Narrows and which is included within the incorporated limits of the Plaintiffs.

(g) Whittier Narrows—a gap between Merced Hills and Puente Hills shown on Exhibit A.

(h) Montebello Forebay—the area designated as such on Exhibit A.

(i) Export to Lower Area—water diverted from surface streams in Upper Area or pumped or developed from underground sources in Upper Area, and in either case conveyed by conduit through Whittier Narrows.

(j) Subsurface flow—all water which passes as ground water through Whittier Narrows at the "narrowest section" as shown on Exhibit A.

(k) Surface flow—all water other than Export to Lower Area and Subsurface Flow, which passes from Upper Area to Lower Area through Whittier Narrows.

(l) Usable Water—all Surface Flow, Subsurface Flow and Export to Lower Area, but excluding:

(1) that portion of Surface Flow, if any, which crosses the southerly boundary of Montebello Forebay as surface runoff less the amount of Surface Flow which has been caused to flow out of Montebello Forebay as surface runoff by any spreading of water in Montebello Forebay by

or on behalf of Lower Area Parties, or any of them;

(2) water imported by or on behalf of Lower Area Parties from outside of the watershed of the San Gabriel River System;

(3) Reclaimed Water, as defined in subparagraph (o) herein, provided, however, that Reclaimed Water (other than that reclaimed by or on behalf of Lower Area Parties) which is percolated and commingled with ground water in Upper Area shall be deemed Subsurface Flow, Surface Flow, or Export to Lower Area as the case may be, when and if it passes through Whittier Narrows;

(4) that portion, if any, of Export to Lower Area which in any Water Year after September 30, 1966, exceeds 23,395 acre-feet;

(5) Make-up Water, as defined in subparagraph (m) herein; and

(6) any water whether flowing on the surface or beneath the surface of the ground which has passed any of the points of surface measurement in Whittier Narrows shown on Exhibit B and prior to its passing from Upper Area to Lower Area is intercepted and returned upstream by conduit or otherwise so that it could again pass any such points of measurement.

(m) Make-up Water—water of usable quality for ground water recharge which is either (a) required to be delivered to Lower Area under terms of paragraph 5 of this Judgment, or (b) designated by the delivering party as a delivery to Lower Area in ad-

vance satisfaction of some possible future delivery requirement under terms of paragraph 5 of this Judgment.

(n) Water Year—October 1 through the following September 30.

(o) Reclaimed Water—water reclaimed from sewage generated in the watershed of the San Gabriel River System above Whittier Narrows.

DECLARATION
OF RIGHT

4. Lower Area Parties have rights in the water supply of the San Gabriel River System. The nature and extent of such rights is not known; however, Lower Area Parties and all other persons downstream from Whittier Narrows who receive water from the San Gabriel River System or have rights in and to such water, shall have, as against Upper Area Parties and all other pumpers of water in the San Gabriel Valley, a right to receive from Upper Area an average annual usable supply of ninety-eight thousand four hundred fifteen (98,415) acre-feet of water over a long-term period of normal rainfall derived as set forth in Exhibit B, consisting of Surface Flow, Subsurface Flow, Export to Lower Area and Make-up Water. If in the future a court of competent jurisdiction shall decree that any person downstream from Whittier Narrows within Central and West Basin Water Replenishment District who is not bound by this Judgment, shall have, as against Upper Area Parties and substantially all other pumpers in the San Gabriel Valley, a right to receive from Upper Area a stated amount of usable supply consisting of Surface Flow, Subsurface Flow, Export to Lower Area or Make-up Water, which right arose out of and is based upon the ownership of land or the

production of water downstream from Whittier Narrows and within Central and West Basin Water Replenishment District, then and in that event the stated amount of such right so decreed shall not increase the declared right as set forth in this paragraph 4; and the receipt of water from Upper Area by such person in such stated amount or portion thereof, consisting of Surface Flow, Subsurface Flow, Export to Lower Area or Make-up Water, shall be deemed a partial satisfaction of such declared right.

PHYSICAL SOLUTION

(5) In recognition of the complexities of annual supply and demand and variations in the components thereof, the Court hereby declares the following physical solution to be a fair and equitable basis for satisfaction of the declared right set forth in paragraph 4 hereof. Compliance with this paragraph 5 shall constitute full and complete satisfaction of said declared right.

ANNUAL AVERAGE ENTITLEMENT

(a) It is determined that the amount of Lower Area average annual entitlement to Usable Water is ninety-eight thousand four hundred fifteen (98,-415) acre-feet.

(b) The outflow of water from Upper Area through Whittier Narrows to Lower Area has varied from year to year and will vary from year to year in the future depending on changing conditions of supply and demand; and, as to any Water Year the average annual rainfall for the San Gabriel Valley during the ten (10) consecutive Water Years ending with that Water Year is a reasonable basis for determining the entitlement of Lower Area to Usable Water for such Water Year.

DETERMINATION
OF RAINFALL

(c) The rainfall in each Water Year for the San Gabriel Valley shall be determined by application of the procedures described in Exhibit B.

RAINFALL
ADJUSTMENT
TABLE

(d) The quantity of water which Lower Area is entitled to receive in any Water Year (hereinafter called Lower Area Annual Entitlement) shall be determined in accordance with the following table,* except that no determination of Lower Area Annual Entitlement shall be made for the last year of any Long-term Accounting Period as hereinafter defined.

DETERMINATION
OF ACCRUED
DEBIT OR
CREDIT

(e) The difference between the aggregate water entitlements determined as provided in this judgment and the aggregate of Usable Water and delivered Make-up Water shall be computed as of the end of each Water Year. Any excess of water entitlements over the quantity of Usable Water and Make-up Water received by Lower Area after September 30, 1963, is hereinafter referred to as Accrued Debit of Upper Area. Any excess of Usable Water and Make-up Water received by Lower Area after September 30, 1963, over water entitlements, is hereinafter referred to as Accrued Credit of Upper Area.

ACCRUED
DEBIT

(f) If at the end of any Water Year it is determined pursuant to subparagraph (e) of this paragraph 5 that there is an Accrued Debit of Upper Area, then Upper District shall cause Make-up Water to be delivered to Lower Area during the following Water Year in an amount not less than the sum of (1) one-third of such Accrued Debit of Upper Area, and

*For table see following page.

## TABLE A

### LOWER AREA ANNUAL ENTITLEMENT
### BASED ON 10-YEAR AVERAGE RAINFALL
### FOR SAN GABRIEL VALLEY

(In Acre-feet)

| Inches of Rainfall | 0 | .1 | .2 | .3 | .4 | .5 | .6 | .7 | .8 | .9 |
|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 64,200 | 64,900 | 65,700 | 66,500 | 67,200 | 68,000 | 68,700 | 69,500 | 70,300 | 71,100 |
| 15 | 71,800 | 72,600 | 73,400 | 74,100 | 74,900 | 75,600 | 76,400 | 77,200 | 77,900 | 78,700 |
| 16 | 79,500 | 80,200 | 81,000 | 81,800 | 82,600 | 83,300 | 84,000 | 84,800 | 85,600 | 86,400 |
| 17 | 87,100 | 87,900 | 88,700 | 89,400 | 90,200 | 91,000 | 91,500 | 92,500 | 93,200 | 94,000 |
| 18 | 94,800 | 95,300 | 96,200 | 96,900 | 97,600 | 98,300 | 98,800 | 99,500 | 100,100 | 100,800 |
| 19 | 101,400 | 102,000 | 102,700 | 103,300 | 103,900 | 104,500 | 105,100 | 105,700 | 106,300 | 107,000 |
| 20 | 107,600 | 108,200 | 108,800 | 109,400 | 110,100 | 110,700 | 111,300 | 111,900 | 112,500 | 113,100 |
| 21 | 113,700 | 114,300 | 115,000 | 115,600 | 116,200 | 116,800 | 117,400 | 118,100 | 118,600 | 119,300 |
| 22 | 119,900 | 120,400 | 121,000 | 121,600 | 122,200 | 122,700 | 123,300 | 123,900 | 124,400 | 125,000 |
| 23 | 125,500 | 126,100 | 126,700 | 127,200 | 127,800 | 128,400 | 128,900 | 129,500 | 130,100 | 130,600 |
| 24 | 131,200 | 131,700 | 132,200 | 132,700 | 133,100 | 133,700 | 134,100 | 134,700 | 135,100 | 135,600 |

(2) that portion, if any, of such Accrued Debit of Upper Area over 25,000 acre-feet which remains after deducting said one-third. If Upper District shall fail to deliver Make-up Water as next above provided and Plaintiffs shall have diligently pursued their legal and equitable remedies to cause Upper District to so deliver, and either: (1) it shall be finally adjudged that Upper District is not obligated to so deliver, or (2) it shall appear that Upper District will not thereafter deliver Make-up Water, then Defendants and any successor or successors in interest by title to a Defendant's water right in Upper Area shall be obligated to so deliver Make-up Water. The provisions of this paragraph are subject to the provisions of paragraph 5(h) below.

ACCRUED
CREDIT

(g) If at the end of any Water Year it is determined pursuant to subparagraph (e) of this paragraph 5 that there is an Accrued Credit of Upper Area, then there shall be no obligation to deliver Make-up Water to Lower Area during the following Water Year.

LONG-TERM
ACCOUNTING

(h) Following September 30, 1963, a Long-term Accounting shall be made from time to time but not sooner than at the end of 15 Water Years, nor later than 25 Water Years after September 30, 1963, or after the last such accounting, whichever is later. A Long-term Accounting shall be made sooner than said 25-year period whenever the average annual rainfall in the San Gabriel Valley for a period of 15 Water Years or more after September 30, 1963, or after the last such accounting, whichever is later, is at least 18 inches but not more than 19 inches.

In making such Long-term Accounting for any such period (herein called Long-term Accounting Period), the aggregate of all Usable Water and Make-up Water received by Lower Area during such period shall be determined and (a) there shall be deducted from said aggregate the amount of Make-up Water, if any, delivered during such period by reason of the existence of an Accrued Debit of Upper Area at the end of the immediately preceding Long-term Accounting Period, or (b) there shall be added to said aggregate the amount of any Accrued Credit of Upper Area determined to exist at the end of the immediately preceding Long-term Accounting Period. The net aggregate amount of Usable Water and Make-up Water so computed shall be compared to the result to be obtained by (1) multiplying the 98,415 acre-feet of water to be received by Lower Area as its average annual usable supply by the number of Water Years in the Long-term Accounting Period, and (2) adjusting the product by the percentage by which the average annual rainfall (to the nearest one hundredth of an inch) for the Long-term Accounting Period involved exceeds or is less than 18.52 inches. (i.e.:

$$\frac{98,415 \times (\text{number of Water Years in Period}) \times (\text{average rainfall for the Period}).}{18.52}$$

If as a result of such comparison it is determined that there is a deficiency in the net aggregate amount of Usable Water and Make-up Water received during the Long-Term Accounting Period, then such deficiency shall be

compensated in the following three Water Years by delivery of Make-up Water to Lower Area in an amount not less than one-third of such deficiency in the first following Water Year and not less than one-half of the balance within the second following Water Year. If it is determined as a result of such comparison that there is an excess of net aggregate Usable Water and Make-up Water received, then the amount of such excess shall be carried forward as an Accrued Credit of Upper Area.

MAKE-UP
WATER
DELIVERY

(i) Make-up Water may be delivered by any one or more of the following means:

SURFACE FLOW DELIVERY

(1) By causing water other than Reclaimed Water to flow on the surface into Montebello Forebay by any means and from any source, provided that such deliveries shall be at such rates or flows and at such times as may be scheduled by the Watermaster.

RECLAIMED WATER CREDIT

(2) By paying to Central Municipal for the benefit of all Lower Area Parties the total amount or any portion of the total amount which Central and West Basin Water Replenishment District or any Plaintiff shall have expended in reclaiming water or for the purchase of Reclaimed Water in the preceding Water Year, and which water when so reclaimed or purchased shall have been passed through Whittier Narrows to Lower Area. Upon written request made by Upper District not later than

three months after the end of a Water Year, Central Municipal shall give a written notice to Upper District and the Watermaster of the total number of acre-feet of such Reclaimed Water so reclaimed or purchased during the preceding Water Year and of the cost per acre-foot therefor at the existing Whittier Narrows Water Reclamation Plant for reclamation of waste water, and at any future additions thereto, and payment therefor at said cost, or costs, may be made not later than one year after receipt of such written notice. Such payment shall be made for the total production of Reclaimed Water from the existing plant in the preceding Water Year before Upper District shall be entitled to make payment for all, or any portion of, Reclaimed Water produced in that year by any future addition to that plant. Such payment by Upper District on behalf of Defendants shall be deemed a delivery of Make-up Water equal to the quantity of Reclaimed Water for which the expenditure of a like sum would have paid at the cost, or costs, per acre-foot so paid for such Reclaimed Water. In no event, however, shall any payment by Upper District under this subparagraph (i) (2) be deemed a delivery of Make-up Water in excess of 14,735 acre-feet in any Water Year during which the amount of Make-up Water required to be furnished by Upper Area is available to it at ground water replenishment rates for delivery to Lower Area, except with the prior written consent of Plaintiffs. Except with

the consent of Plaintiffs, no payment by Upper District under this subparagraph (i) (2) may be designated as advance satisfaction of some possible future delivery requirement.

DIRECT DELIVERY

(3) By delivering, or causing to be delivered, water to any of Lower Area Parties with consent of Plaintiffs for use in Lower Area.

WATER RIGHTS BOUND

(j) It is further determined and adjudicated that the obligations provided above in subparagraphs (f) and (h) of this paragraph 5 for each Defendant shall constitute and be a servitude upon the existing water rights of each Defendant in and to the water supply of the San Gabriel River System upstream from Lower Area and shall run with and forever bind said water rights for the benefit of the water rights of Lower Area Parties.

TRANSFER OF WATER RIGHTS

(k) If any Defendant, other than Upper District, shall desire to transfer all or any of its said water rights to a person, firm or corporation, public or private, who or which is not then bound by this Judgment as a Defendant, such Defendant shall as a condition to being discharged as hereinafter provided cause such transferee to appear in this action and file a valid and effective express assumption of the obligations imposed upon such Defendant under this Judgment as to such transferred water rights. Such appearance and assumption of obligations shall include the filing of a designation of the address to which shall be mailed all notices, requests,

objections, reports and other papers permitted or required by the terms of this Judgment.

If any Defendant shall have transferred all of its said water rights and each transferee not theretofore bound by this Judgment as a Defendant shall have appeared in this action and filed a valid and effective express assumption of the obligations imposed upon such Defendant under this Judgment as to such transferred water rights, such transferring Defendant shall thereupon be discharged from all obligations hereunder. If any Defendant other than Upper District shall cease to own any rights in and to the water supply of the San Gabriel River System upstream from Lower Area, and shall have caused the appearance and assumption provided for in the third preceding sentence with respect to each voluntary transfer, then upon application to this Court and after notice and hearing such Defendant shall thereupon be relieved and discharged from all further obligations hereunder. Any such discharge of any Defendant hereunder shall not impair the aggregate rights of Lower Area Parties or the responsibility hereunder of the remaining Defendants or any of the successors.

WATERMASTER
APPOINTMENT

6. A Watermaster comprised of three persons to be nominated as hereinafter provided shall be appointed by and serve at the pleasure of and until further order of this Court. One shall be a representative of Upper Area Parties nominated by and through Upper District, one shall be a representative of Lower Area Parties nominated by and through Central Municipal, and one shall be

jointly nominated by Upper District and Central Municipal. If a dispute arises in choosing the joint appointee, the Court shall make the appointment. If Central Municipal or Upper District shall at any time or times nominate a substitute appointee in place of the appointee last appointed to represent Lower Area Parties, in the case of Central Municipal, or to represent Upper Area Parties, in the case of Upper District, or if Central Municipal and Upper District shall at any time or times jointly nominate a substitute appointee in place of the joint appointee last appointed, such substitute appointee shall be appointed by the Court in lieu of such last appointee or joint appointee. Each such nomination shall be made in writing, served upon the other parties to this action and filed with the Court. The Watermaster when so appointed shall administer and enforce the provisions of this Judgment and the instructions and subsequent orders of this Court.

POWERS AND DUTIES

7. The Watermaster shall have the following powers and duties and shall take all steps necessary to make the following determinations for each Water Year promptly after the end of such Water Year:

(a) the amount of Surface Flow,

(b) the amount of Subsurface Flow,

(c) the amount of Export to Lower Area,

(d) the amount of water which passed as Surface Flow or Subsurface Flow across the boundary between Upper Area and Lower Area through Whittier Narrows and which was imported by or on behalf of Lower Area Parties from outside of the watershed

of the San Gabriel River System above Whittier Narrows,

(e) the amount and quality of Reclaimed Water reclaimed by or on behalf of Lower Area,

(f) the total amount of Make-up Water delivered to Lower Area, together with the respective amounts delivered by each method specified in paragraph 5 of this Judgment,

(g) the amount of Usable Water received by Lower Area,

(h) the amount of local storm inflow, originating in Lower Area, to the channel of each of Rio Hondo and San Gabriel River within Montebello Forebay,

(i) the surface outflow from Montebello Forebay in the channel of each of the Rio Hondo and San Gabriel River,

(j) the number of inches of depth of average rainfall in the San Gabriel Valley,

(k) the average annual rainfall in the San Gabriel Valley for the ten consecutive Water Years just ended,

(l) Lower Area Annual Entitlement or the entitlement for the Long-term Accounting Period, determined pursuant to subparagraph (d) or (h), respectively, of paragraph 5 of this Judgment,

(m) Accrued Debit of Upper Area, if any, or Accrued Credit of Upper Area, if any, as it exists at the end of such Water Year, and

(n) the amount, if any, of Make-up Water which Upper District is obligated to deliver during the following Water Year.

DETERMINATIONS
TO BE BASED ON
EXHIBIT B

8. Each of the above required determinations shall be based on and conform to the procedures specified in this Judgment and in Exhibit B insofar as said exhibit provides a procedure.

REPORTS
MEASUREMENTS
AND DATA

9. The Watermaster shall report to the Court and to each party in writing at the same time and not more than five months after the end of each Water Year the determination required by paragraph 7 above.

The Watermaster shall cause to be installed and maintained in good working order such measuring devices in Whittier Narrows and elsewhere as are necessary or required and not otherwise available for the making of the determinations required by paragraph 7 above.

The Watermaster shall collect and assemble from each of the parties, and the parties shall make available to the Watermaster, such records, reports and other data as may reasonably be required in the making of the determinations required of the Watermaster under paragraph 7 above. All records, reports and data received, maintained or compiled by the Watermaster shall be open to inspection by any party or its representative.

OBJECTIONS

10. Any party who objects to any determination made by the Watermaster pursuant to paragraph 7 above, may make such objection in writing to the Watermaster within thirty (30) days after the Watermaster gives the required written notice of such determination. Within thirty (30) days after expiration of the time within which objection may be made to such determination, the Watermaster shall consider all objections thereto and shall amend, modify or

affirm the determination and give notice thereof at the same time to all parties and shall file a copy of such final determination with the Court. If the Watermaster denies any objection in whole or in part, the party whose objection was so denied may within thirty (30) days after service of the final determination upon it, make written objection to such denial by filing its objections with the Court after first mailing a copy of such objections to the Watermaster and to each party, and such party shall bring its objections on for hearing before the Court upon notice and motion and at such time as the Court may direct. If the Watermaster shall change or modify any determination, then any party may within fifteen (15) days after service of such final determination upon it object to such change or modification by following the procedure prescribed above in the case of a denial of an objection to the first determination. If objection to a final determination is filed with the Court as herein provided and brought on for hearing, then such final determination may be confirmed or modified in whole or in part as the Court may deem proper.

**CHANGE IN METHOD OF MEASUREMENT**

11. If the Watermaster shall deem it advisable to make a change in the method of making any measurement required under the terms of this Judgment, the Watermaster shall notify all parties of such proposed change, and if within sixty (60) days of such notification no party shall file its written objections to such change with the Watermaster, the Watermaster may put such proposed change into effect. If, however, any party files its written objection to the proposed change it shall by notice of motion filed not later than fifteen (15)

days after the expiration of said 60-day period and served on the Watermaster and all parties bring its objection on for hearing before the Court at such time as the Court may direct, and the Court shall rule on whether the Watermaster may make such proposed change.

BUDGET

12. In addition to the above-specified administrative powers and duties, the Watermaster shall prepare a tentative budget for each Water Year, stating the estimated expense for discharging the duties of the Watermaster set forth in this Judgment. The Watermaster shall mail a copy of the tentative budget to each of the parties at the same time at least sixty (60) days before the beginning of each Water Year. However, with respect to the first Water Year following the entry of this Judgment, the tentative budget shall be mailed not later than one hundred and twenty (120) days from the entry of this Judgment. If any party has an objection to a tentative budget, or any suggestions with respect thereto, that party shall present the same in writing to the Watermaster within fifteen (15) days after service of the tentative budget upon it. If no objections are received, the tentative budget shall become the final budget. If objections to the tentative budget are received, the Watermaster shall, within fifteen (15) days after the expiration of the time for presenting objections, consider all such objections, prepare a final budget, and mail a copy thereof to each party, together with a statement of the amount assessed, if any, to each party, computed as provided in paragraph 13. If the Watermaster denies any objection in whole or in part, the party whose ob-

jection was so denied may, within fifteen (15) days after service of the final budget upon it, make written objection to such denial by filing its objections with the Court after first mailing a copy of such objections to each party, and such party shall bring its objections on for hearing before the Court upon notice and motion and at such time as the Court may direct. If the Watermaster makes a change in the tentative budget, then any party may within fifteen (15) days after service of the final budget upon it object to any such change by following the procedure prescribed above in the case of a denial of an objection to the tentative budget. If objection to the final budget is filed with the Court as herein provided and brought on for hearing, then such final budget may be confirmed or adjusted in whole or part as the Court may deem proper.

FEES AND EXPENSES

13. The fees, compensation and expenses of the Watermaster hereunder shall be borne by the parties in the following proportions: 50% by Upper District, 41.2% by Central Municipal, 7.125% by the City of Long Beach, and 1.675% by the City of Compton, or such other division among the Plaintiffs as they may agree upon in writing and file with the Watermaster.

Payment of the amount assessed to a party, whether or not subject to adjustment by the Court as provided in paragraph 12, shall be paid on or prior to the beginning of the Water Year to which the final budget and statement of assessed costs is applicable. If such payment by any party is not made on or before said date, the Watermaster shall add a penalty of 5% thereof to such party's statement. Payment required of any party hereunder may be enforced

by execution issued out of this Court, or as may be provided by order hereinafter made by this Court. All such payments and penalties received by the Watermaster shall be expended for the administration of this Judgment. Any money remaining at the end of any Water Year shall be available for use in the following Water Year.

SUCCESSOR OF UPPER DISTRICT

14. If a public agency or district shall be formed hereafter which shall include the present area of Upper District and shall have ability equal to or greater than that which Upper District now has to perform the obligations under this Judgment, and shall appear in this action and file a valid and effective assumption of such obligations, then Upper District upon application to this Court, and after notice and hearing, shall thereupon be relieved and discharged from all further obligations hereunder.

CONTINUING JURISDICTION OF THE COURT

15. Full jurisdiction, power and authority is retained and reserved by the Court for the purpose of enabling the Court upon application of any party by motion and upon at least thirty (30) days notice thereof, and after hearing thereon (i) to make such further or supplemental orders or directions as may be necessary or appropriate for the construction, enforcement or carrying out of this Judgment, and (ii) to modify, amend or amplify any of the provisions of this Judgment whenever substantial changes or developments affecting the physical, hydrological or other conditions dealt with herein may, in the Court's opinion, justify or require such modification, amendment or amplification.

If at any time Plaintiffs and at least two-thirds of the Defendants including

any two of the cities of Alhambra, Azusa and Monterey Park, shall file with the Court a written stipulation (i) that henceforth in determining any one or more of the component parts of Usable Water received by Lower Area in any Water Year, the Watermaster shall not use the method specified in this Judgment but shall use instead a new, different or altered method as specified and described in such stipulation, and (ii) that such new, different or altered method or methods shall be applied to redetermine the average annual amount of Usable Surface Flow, Subsurface Flow and Export to Lower Area which Lower Area received each Water Year during the period October 1, 1934 to September 30, 1959, referred to as the base period, and that on the basis of such redetermination the Court may modify paragraphs 4 and 5 of this Judgment to establish a new and different water entitlement and yearly adjustment thereto which shall thereafter control, then and in that event, after hearing pursuant to motion and notice to all parties, held at such time as the Court may direct, the Court may deny the motion or it may grant it and (a) approve the future use of the stipulated new, different or altered method or methods, by the Watermaster, and (b) by use of the stipulated new, different or altered method or methods, redetermine the average annual amount of Usable Surface Flow, Subsurface Flow and Export to Lower Area received each Water Year during the base period, and on the basis thereof modify paragraphs 4 and 5 of this Judgment to provide for a new and different water entitlement and yearly adjustment thereto, which modifications shall be effective and control commencing with the Water Year fol-

lowing the entry of the order so modifying paragraphs 4 and 5.

REPORT OF
TRANSFER
OF WATER
RIGHTS

16. Every transfer of any of those water rights of Defendants which are the subject of Paragraph 5(j) of this Judgment, whether such transfer is voluntary or involuntary, shall be reported promptly in writing by the transferor to the Watermaster; and the Watermaster shall give prompt written notice of such transfer to each party and to each transferee involved in every other transfer of any of those water rights. Such report by the transferor and notice by the Watermaster shall contain the following information as to each such transfer:

(a) The identity of the transferor;

(b) The identity of the transferee;

(c) The effective date of the transfer;

(d) A brief description of the document by which such transfer is made, and the recording data, if any;

(e) A statement as to whether the transfer was voluntary or involuntary;

(f) A statement whether or not after such transfer the transferor still has or claims to have any of the water rights which are the subject of Paragraph 5(j) of this Judgment.

NOTICES

17. All notices, requests, objections, reports and other papers permitted or required by the terms of this Judgment shall be given or made by written document and shall be served by mail on each party and on each transferee of water rights who has appeared and filed the assumption of obligations required by

paragraph 5(k) of this Judgment, and where required or appropriate, on the Watermaster. For all purposes of this paragraph the mailing address of each party shall be that set forth below its signature to the Stipulation for Judgment, and the mailing address of each transferee of water rights shall be that set forth in the appearance and assumption of obligations required by paragraph 5(k) of this Judgment, until changed as provided below. No further notice of any kind as to any matter arising hereunder, including notice to attorneys of record for any party or such transferee, need be given, made or served.

If any party or any such transferee of water rights shall desire to change its designation of mailing address, it shall file a written notice of such change with the clerk of this court and shall serve a copy thereof by mail on the Watermaster. Upon the receipt of any such notice the Watermaster shall promptly give written notice thereof to each party and to each transferee of water rights.

EFFECTIVE DATE

18. The rights decreed and the obligations imposed by this Judgment shall be effective October 1, 1963, and shall accrue from that date.

COSTS

19. None of the parties shall recover any costs from any other party.

Dated: _____, 1965.

_____
Judge

## Appendix 3
### REIMBURSEMENT CONTRACT

THIS CONTRACT is made by and between UPPER SAN GABRIEL VALLEY MUNICIPAL WATER DISTRICT, herein called "Upper District", and the cities of ALHAMBRA, ARCADIA, AZUSA, COVINA, EL MONTE, GLENDORA, MONTEREY PARK, MONROVIA, SOUTH PASADENA, and WHITITER [sic]; BALDWIN PARK COUNTY WATER DISTRICT, and SAN GABRIEL COUNTY WATER DISTRICT; AZUSA AGRICULTURAL WATER COMPANY, AZUSA VALLEY WATER COMPANY, CALIFORNIA CITIES WATER COMPANY, CALIFORNIA DOMESTIC WATER COMPANY, CALIFORNIA WATER & TELEPHONE COMPANY, COVINA IRRIGATING COMPANY, CROSS WATER COMPANY, EAST PASADENA WATER COMPANY, LTD., GLENDORA IRRIGATING COMPANY, SAN GABRIEL VALLEY WATER COMPANY, SOUTHERN CALIFORNIA WATER COMPANY, SUBURBAN WATER SYSTEMS, SUNNYSLOPE WATER COMPANY, and VALLECITO WATER COMPANY, corporations, herein collectively called "Pumpers."

### RECITALS

1. *The Action.* In the matter of *Board of Water Commissioners of the City of Long Beach, et al.* v. *San Gabriel Valley Water Company, et al.,* (L. A. Superior Court No. 722,647) the water rights of substantially all major water producers in the main San Gabriel Valley are sought to be restricted.

2. *Judgment.* The parties named above, except City of Whittier, are concurrently executing a Stipulation that a Judgment substantially in the form annexed hereto shall be rendered and it is anticipated that such Judgment will be rendered in the action.

3. *Public Interest in Settlement.* It is in the best interests of the Pumpers and in the best interests of the water users and taxpayers within the corporate boundaries of those Pumpers which are public agencies, of the consumers of those Pumpers which are utilities or mutual water companies, and of all residents and taxpayers of Upper District, that said action be settled and disposed of in accordance with the terms of said Judgment in order to preserve the water supplies within Upper Area.

### DEFINITIONS

1. *"Contract Costs"*—All costs hereafter paid by Upper District:

 (a) In providing Make-up Water under the terms of the judgment. In computing such costs of providing

Make-up Water, any cost which Upper District shall pay which it would have paid even though it had not provided Make-up Water shall be excluded; and particularly but not exclusively, no amount which shall be paid to The Metropolitan Water District of Southern California as a condition to any past or future annexation shall be deemed a cost of providing Make-up Water. Such costs may include interest paid by Upper District upon money borrowed for advancements made by it or interest which would have been received by the District, but which it lost by reason of making such advancements.

(b) In complying with the terms of said judgment.

(c) In keeping the records, making the determinations and collecting the moneys required by the later provisions of this contract.

2. *"Assessable Pumpage"*—The amount of ground water produced in the applicable calendar year by or on behalf of any Pumper by pumping or extraction thereof from the Upper Area, including ground water produced under rights hereafter acquired from any source.

3. *Common Terms with Judgment*—All terms specially defined in said judgment are used herein in the sense in which they are therein defined, and said special definitions are incorporated herein by this reference.

### OPERATIVE PROVISIONS

1. *Consideration for Execution.* The great majority of the defendants in the action are situated in whole or in part within Upper District and pump water therein. Certain defendants, including the Cities of Alhambra, Azusa and Monterey Park, as well as the City of Whittier which is not a defendant, lie outside Upper District. Execution of this agreement by all parties to it is essential to induce each party hereto to execute this agreement, and likewise, execution of the Stipulation for Judgment by all defendants in the action is necessary to induce each party hereto to execute this contract. Each party executes this contract in consideration of its execution by the other parties, and in consideration of the execution of the Stipulation by the parties thereto. Moreover, by this contract each party other than City of Whittier waives its right to cross-complain in the action so as to bring City of Whittier into the action as a party.

2. *Intervention by Upper District.* In consideration of the execution of this contract by Pumpers and to contribute to the physical solution of providing adequate water for its inhabitants, Upper District has intervened as a defendant in the action and agrees to execute the stipulation for said judgment.

3. *Administration.* Upper District shall administer the provisions of this contract, as to all Pumpers, including additional parties hereto mentioned in Paragraph 16.

4. *Covenant to Reimburse.* Each Pumper hereby agrees to pay to Upper District such Pumper's share of Contract Costs allocated and determined as provided below.

5. *Allocation of Costs Among Pumpers.* Pumpers agree among themselves, each for the benefit of all other Pumpers, to share and participate in the payment of any sums due Upper District hereunder in such proportion as the Assessable Pumpage of each Pumper bears to the total Assessable Pumpage of all Pumpers for the applicable period covered by any assessment as hereinafter provided, subject to the provisions of Paragraphs 9 and 11 below.

6. *Reports by Pumpers.* Pumpers shall file under penalty of perjury the reports hereinafter specified in the form provided by Upper District, as follows:

(a) *Time and Procedure for Filing.* Each year, on or before March 1, each Pumper shall file with Upper District a written report of its extractions of water from Upper Area for the preceding calendar year containing the information set forth in subparagraph (b) of this paragraph.

(b) *Contents of the Report.* Such annual reports to Upper District shall set forth:

(1) The name and address of the Pumper; and

(2) The number of acre feet of water which was pumped or extracted from Upper Area by or on behalf of the Pumper during the calendar year covered.

(c) *Determination in Lieu of Report.* In the event any Pumper fails to so file such report, Upper District shall make a determination of the Assessable Pumpage of such Pumper, which determination, subject to the provisions of Paragraph 9 below, shall be final and binding.

7. *Notice of Assessment.* On or before June 1 of each year, Upper District shall serve a Notice of Assessment on each Pumper covering the preceding calendar year which will contain a statement of:

(a) The amount of Assessable Pumpage by each Pumper;

(b) A detailed statement of Contract costs during the preceding calendar year, if any; and

(c) A statement of the amount of such Contract Costs which are assessable to and payable by the Pumper to whom such notice is sent.

8. *Payment—Delinquency and Default.* All assessments herein provided for shall be due and payable on the following July 31. In the event of nonpayment of any assessment, Upper District may bring an action and shall have the right to recover such assessment, together with interest thereon at the rate of 7% per annum from the date of delinquency and costs of suit, including any reasonable attorneys' fees incurred.

If, after due diligence, Upper District is unable to collect a Pumper's allocated cost, such uncollectible amount (including interest, costs and attorneys' fees) shall be prorated among and paid by the other Pumpers in the same proportions as they paid assessments for the year or years in question. Said proration shall be billed and payable with the next succeeding assessment.

9. *Redetermination of Assessable Pumpage.* Any Pumper who has paid his assessment as herein provided may at any time within 90 days after receipt of Notice of such Assessment request a redetermination of the Assessable Pumpage of such Pumper or of any other Pumper or Pumpers reflected in such notice. Such request shall be addressed in writing to Upper District and shall set forth the basis of the requesting Pumper's belief that such data are incorrect. Upon the receipt of any such request, the following procedures shall be undertaken by Upper District:

(a) *Notice of Request for Redetermination.* Upper District shall forthwith notify in writing any Pumper whose Assessable Pumpage has been questioned, of the fact of such request and the name of the requesting Pumper. Notice shall further be sent to all Pumpers that procedures will be undertaken pursuant to this

paragraph, and shall state briefly the issues to be determined.

(b) *Availability of Records.* Subsequent to such notice, the records of the Pumper whose Assessable Pumpage is subject to a request for redetermination shall be made available at reasonable hours and upon reasonable demand to Upper District, insofar as such records are relevant to a determination of the Assessable Pumpage of the Pumper during the period involved.

(c) *Investigation and Notice of Hearing.* Upper District shall conduct an investigation and shall by written decision served on all Pumpers redetermine or affirm such Assessable Pumpage. Upper District may at its option set a date for hearing. In such event, at least ten days' notice in writing of said hearing date shall be given to all Pumpers.

(d) *Conduct of Hearing and Decision.* If hearing be held, Upper District shall not be bound therein by strict rules of evidence, but may rely on any evidence which it deems of probative value. Any Pumper may present evidence and arguments thereat. The written decision of Upper District, with or without such hearing, shall be served on all Pumpers and shall be conclusive for purposes of this contract, unless said issue is submitted to a court of competent jurisdiction within 90 days from notice of such decision.

(e) *Reallocation of Contract Costs.* If Assessable Pumpage is modified by any such decision, Contract Costs shall be reallocated in accordance therewith. Said reallocation shall be billed and payable with the next succeeding assessment.

10. *Water Rights Unaffected.* This contract relates solely to the equitable allocation of Contract Costs and does not involve or constitute an admission or agreement as to the water rights of any Pumper. Execution of this contract or of the said Stipulation for Judgment shall not prevent any party hereto from bringing or maintaining any action or proceeding to determine rights to pump, extract or store water, or to limit or curtail any pumping, extraction or storage of water in or from Upper Area or elsewhere, except as limited by Paragraphs 1 and 16 of the Operative Provisions hereof.

11. *Changed Conditions.* It is recognized that conditions in Upper Area may hereafter change to such an extent that it may become equitable to modify either the total obligation of Pumpers to Upper District hereunder or the allocation of Contract Costs. While this contract is entered into to assure Upper District of reimbursement of an amount up to its entire Contract Costs, it is not intended hereby, and this contract shall not be deemed, to prevent Upper District from modifying and reducing such obligation or from applying other relief which may reduce the burden on Pumpers. Without limitation upon the power of Upper District to otherwise reduce the aggregate amount payable under this contract, the following specific instances of changed conditions are contemplated:

(a) *Allocation of Portion of Burden to Taxes.* It may at some future date appear equitable and fair to allocate all or a portion of Contract Costs to ad valorem taxes or other revenues of Upper District. In such event, Upper District may, in the discretion of its Board of Directors, allocate all or a portion of Contract Costs to such revenue sources and the remainder, if any, thereof, shall be payable under the terms of this contract.

(b) *Imposition of Pump Tax.* If Upper District should acquire and exercise the power to levy a tax or assessment upon the pumping or extraction of ground water within its boundaries and such power may be exercised for the purpose of paying all or a portion of Contract Costs as herein defined or the proceeds of such tax or assessment may be used to purchase Make-up Water as herein defined, then the proceeds of such tax or assessment shall first be used by Upper District to apply towards the Contract Costs otherwise payable by Pumpers within Upper District or towards paying the share of Make-up Water costs otherwise required of said Pumpers.

(c) *Adjudication of Rights.* If all or substantially all of the water rights within Upper Area shall be adjudicated (including the rights of all Pumpers), and its natural and safe yield determined, then this contract shall be deemed modified to the extent that Assessable Pumpage shall include only that amount of water produced over and above the safe yield portion of adjudicated rights owned by any Pumper; provided that this subparagraph (c) shall not apply to any year in which the

aggregate of all Assessable Pumpage as so modified is less than 25,000 acre feet.

12. *Effective Date.* This contract shall be effective ten (10) days after notice in writing of execution thereof by all parties, which notice shall be given to all Pumpers by Upper District, but shall cease and terminate on July 1, 1967, unless by said date (a) this contract shall have been validated as provided below, and (b) the Judgment shall have been rendered.

13. *Validation.* Within four months after this contract becomes effective, a proceeding or proceedings shall be instituted by Upper District in a court of competent jurisdiction by an appropriate action or actions for determination of the validity of this contract.

14. *Term.* The term of this contract shall commence upon its effective date and continue so long as the Judgment, as entered or as modified, shall remain in effect, subject, however, to the provisions of Paragraph 12 above.

15. *Notices.* Any notice to be served upon any party hereunder may be served either personally or by mail. If served by mail, such notice shall be mailed in the County of Los Angeles, State of California, by certified mail, postage prepaid, return receipt requested, or by registered mail, and shall be addressed to the party to be served at its address as set forth below, or (in the case of Upper District) at such other address as it may have last specified in writing to the Pumper or Pumpers involved for the service of notices hereunder, or (in the case of a Pumper) at such other address as it may have last specified in writing to Upper District for the service of notices hereunder. Any notice so served by mail shall be deemed to have been served upon the first business day (excluding Saturdays, Sundays and holidays) after such mailing.

16. *Additional Parties.* In addition to Pumpers and their successors and assigns referred to in Paragraph 17 below, any other person or entity who or which shall pump or extract water in or from Upper Area (herein referred to as an "additional party"), may become a party to this contract, provided (a) Upper District shall give its written consent thereto, and (b) no Pumper or additional party shall serve upon Upper District its written objection thereto. If Upper District shall give its written consent to execution of this

contract by an applying additional party, it shall then give written notice of such application and consent by Upper District to each Pumper and each additional party, and if within thirty (30) days after such notice no Pumper or additional party shall have served upon Upper District its written objection to execution of this contract by the applying additional party, such additional party's application shall be deemed to have been accepted and it may become a party to this contract by delivery to Upper District of a duly executed instrument in writing stating that such person or entity joins in and becomes a party to this contract.

Any additional party so joining shall become bound by all obligations of this contract, becoming due or which should be performed within the terms of this contract on and after the ensuing January 1. Such obligations include the duty to make the report of extractions during the preceding calendar year (i. e., the year in which the contract is executed) required by Paragraph 6, and to make the payment based upon such extractions as required by Paragraph 5, provided, however, that such additional party shall have no liability under Paragraph 8 with respect to any nonpayments of an assessment based upon extractions by a Pumper or other additional party prior to the year in which such additional party joins in this contract.

As to each Pumper who executes this contract after it becomes effective, Upper District agrees that for a period of 90 days after giving its said written consent, it will bring no action against such additional party to limit or define its rights to pump water in or from Upper Area. Further, if more than one such Pumper shall become a party to this agreement at the same time as any other pumper, each will execute and shall be deemed to have executed this contract and to have joined therein in consideration of the joinder in this contract by the other or others concurrently joining in this contract.

Any such additional party shall be deemed a Pumper for all purposes of this agreement.

17. *Successors and Assigns.* This contract shall inure to the benefit of and bind the successors in ownership of the water rights of the parties. If any Pumper shall sell or transfer or agree to sell or transfer its water rights in Upper Area or any part of such water rights, such Pumper shall require as a condition of any such sale, transfer or agreement

that the purchaser or transferee, if not already a party to this contract, shall execute this contract and become a party thereto. Upon a full transfer of such rights by a Pumper and assumption by the assignee as above provided, the assigning Pumper shall be discharged of obligation hereunder. If such Pumper fails to obtain such assumption (except in cases of a transfer under order of court or by operation of law) the assigning Pumper shall remain bound by the contract and production of water by said assignee by the exercise of the right assigned shall be treated as production by such Pumper.

18. *Execution in Counterparts.* This contract may be executed in counterparts (each counterpart being an exact copy or duplicate of the original) and all counterparts collectively shall be considered as constituting one complete contract.

IN WITNESS WHEREOF this contract is executed by the undersigned by its duly authorized officer.

Dated _____.